STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**FILED**

**March 16, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **L.C., A.C., A.W.-1, and A.W.-2**

**No. 20-0739** (Jackson County 19-JA-27, 19-JA-28, 19-JA-29, and 19-JA-30)

**MEMORANDUM DECISION**

Petitioner Mother K.W., by counsel Roger L. Lambert, appeals the Circuit Court of Jackson County's August 25, 2020, order terminating her parental rights to L.C., A.C., A.W.-1, and A.W.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Katherine A. Campbell, filed a response in support of the circuit court's order. The guardian ad litem, Erica Brannon Gunn, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights and denying her motion for a continuance of the final dispositional hearing.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2019, the DHHR filed an abuse and neglect petition based on petitioner's substance abuse, untreated mental health issues, and the unsanitary conditions in her home. According to the petition, one of petitioner's neighbors contacted law enforcement after petitioner came to her residence with petitioner's two youngest children, A.W.-1 and A.W.-2, and began talking about "wild animals in the walls and bacteria coming from the ceiling in the room that she was staying in." The neighbor reported that the two young children—then approximately two years old and fifteen months old, respectively—were underdressed, as the youngest child was wearing only a t-shirt and diaper despite the fact that it was thirteen degrees Fahrenheit at the time. The

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because two children share the same initials, they will be referred to as A.W.-1 and A.W.-2 throughout this memorandum decision.

1

neighbor also reported that petitioner and the father of A.W.-2 had been acting strangely for approximately six months and engaging in behavior that the petition asserted was indicative of methamphetamine abuse. Petitioner's half-brother also reported observing drug paraphernalia in the home and that petitioner abused a wide variety of drugs. While the half-brother was in the home, petitioner told him "that there were dust particles, radiation and bacteria coming out of the ceiling and going into their bodies." The half-brother also indicated that petitioner stated that she was going to kill herself, a claim that law enforcement investigated. Upon arriving at the home, law enforcement observed animal feces and urine throughout the residence, in addition to large piles of trash and clothing. The home was also without heat, resulting in petitioner using two electric heaters to warm the residence. Law enforcement also observed the youngest child's crib was covered with plastic sheeting, similar to an oxygen tent, which created a suffocation risk. The DHHR further alleged that a maternal uncle took the two youngest children, then approximately two years old and fifteen months old, respectively, to a doctor's appointment. According to the petition, neither child had received shots since birth, one child's x-ray revealed a spot on her lung from a chest cold, and both children had lice.

Following the petition's filing, petitioner stipulated to drug use, mental health issues, and unsanitary conditions in the home and was adjudicated as an abusing and neglectful parent based upon these admissions. She further moved for a post-adjudicatory improvement period, which the circuit court granted in August of 2019. Thereafter, the matter progressed with petitioner under the terms of the improvement period until the guardian eventually filed a motion to revoke petitioner's improvement period due to her noncompliance. The guardian also moved to terminate petitioner's parental rights.

Over two days in August of 2020, the circuit court held dispositional hearings to address these motions, during which a Child Protective Services ("CPS") worker testified to having arranged for petitioner to participate in parenting and adult life skills services, random drug screens, counseling, and supervised visits with the children, among other services. According to the CPS worker, petitioner's compliance with these required services was sporadic, as she experienced periods where she "didn't show up for . . . drug screens, didn't contact the providers, [and] failed the drug screens." The CPS worker was unequivocal that petitioner did not complete all the services required of her during the improvement period and was removed from certain programs for excessive unexcused absences. A witness from the local day report center testified to petitioner's multiple missed drug screens and the fact that, despite being permitted double the normal allotment of unexcused absences, petitioner was removed from a substance abuse program after repeated failures to attend. The witness also testified to petitioner having tested positive for methamphetamine. Ultimately, the guardian requested that petitioner submit to a drug screen during the first dispositional hearing, which the circuit court ordered.

When the parties reconvened for the second dispositional hearing, petitioner was not present, having notified her counsel earlier in the day that she was ill. Petitioner's counsel requested a continuance, which the circuit court denied. Further, petitioner's drug screen from the prior hearing was confirmed to have been positive for methamphetamine. During this hearing, a witness indicated that petitioner had not visited the children for a long period because of her inability to pass the number of drug screens required to attend visits. The witness further corroborated the testimony of several other witnesses that petitioner failed to properly utilize the

DHHR's transportation services in order to facilitate her compliance with services. Based upon this evidence, the circuit court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. As such, the court terminated petitioner's parental rights to all the children.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

Petitioner first argues that the circuit court erred in terminating her parental rights because she substantially complied with services over the course of the proceedings and only committed de minimus violations of the terms and conditions of her improvement period. This argument, however, is unsupported by the record. Rather than establishing that she substantially complied with services below, several providers testified to petitioner's sporadic compliance. In fact, the record shows that as a result of her failure to substantially comply, petitioner was removed from several services, even in instances where she was permitted more leeway with unexcused absences than is normally allowed. Further, the record shows that petitioner tested positive for methamphetamine on the day of the first dispositional hearing. Far from demonstrating substantial compliance with the terms and conditions of her improvement period, this evidence supports the circuit court's finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future.

According to West Virginia Code § 49-4-604(d)(1), a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected includes one in which

---

[2]The parental rights of the fathers of A.W.-1 and A.W.-2 were also terminated. The permanency plan for those children is adoption in their current foster home. The permanency plan for L.C. and A.C. is to remain in the custody of their nonabusing father.

[t]he abusing parent . . . [has] habitually abused or [is] addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and the person or persons have not responded to or followed through the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning.

Given petitioner's continued abuse of methamphetamine and failure to complete the required services to correct this issue, this finding was clearly not in error. Similarly, while petitioner asserts that the children should have been returned to her custody, service providers below testified that the children would not be safe if returned to petitioner because of her failure to address the issues of abuse and neglect. Therefore, the circuit court also found that the children's welfare required termination of petitioner's parental rights. Pursuant to West Virginia Code § 49-4-604(c)(6), circuit courts are permitted to terminate parental rights upon these findings. Further, this Court has held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, we find no error in the circuit court's termination of petitioner's parental rights.

Finally, petitioner argues that the circuit court's denial of her motion for a continuance of the final dispositional hearing violated her due process rights and her right to be heard. Petitioner is correct that West Virginia Code § 49-4-601(h) provides that parents in abuse and neglect proceedings "shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses." Petitioner fails, however, to explain how the circuit court violated her right to this opportunity by denying her motion. The record shows that petitioner was presented the opportunity to be heard but chose to relinquish that right by failing to appear at the hearing. While petitioner asserts that she was ill, there is nothing in the record to corroborate this assertion, other than the parents' unsupported assertions. This Court has held that "[a] motion for continuance is addressed to the sound discretion of the trial court, and its ruling will not be disturbed on appeal unless there is a showing that there has been an abuse of discretion." Syl. Pt. 3, in part, *In re Mark M.*, 201 W. Va. 265, 496 S.E.2d 215 (1997) (citation omitted). "Whether there has been an abuse of discretion in denying a continuance must be decided on a case-by-case basis in light of the factual circumstances presented, particularly the reasons for the continuance that were presented to the trial court at the time the request was denied." *Id*. at 266, 496 S.E.2d at 216, Syl. Pt. 4 (citation omitted). On appeal, petitioner fails to allege how she was prejudiced by the denial of the continuance, other than to generally assert that it was a violation of due process. She does not assert any specific evidence that she would have introduced if present to overcome termination or otherwise explain why the proceedings should have been continued in her absence. As such, we find no abuse of discretion in the circuit court's denial of petitioner's

motion to continue, especially in light of the fact that she was represented by counsel throughout the dispositional hearing.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 25, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**:  March 16, 2021


**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton